**FIRST DIVISION
ELLINGTON, C. J.,
PHIPPS, P. J., and DILLARD, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/**

**December 17, 2012**

# In the Court of Appeals of Georgia

A12A1738. CROSBY v. THE STATE.

DILLARD, Judge.

Following a jury trial, Jonathan Crosby was convicted on one count of burglary and one count of possession of tools for the commission of burglary. Crosby appeals his convictions and the denial of his motion for new trial, arguing that the evidence supporting his convictions was insufficient because testimony pertaining to the DNA samples that connected him to the crime constituted inadmissible hearsay and violated his right to confrontation under the Sixth Amendment to the United States Constitution. Crosby further argues that the trial court erred in denying his claim that his counsel rendered ineffective assistance and in admitting evidence of a previous conviction for impeachment purposes without making the specific findings required by statute. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows that on August 3, 2009, Jeanette Sapp and her sister met to go shopping and returned to Sapp's home in Guyton, Georgia, some time after 9:00 p.m. Upon entering her home through the back door, Sapp was surprised to see a tall, unfamiliar man rummaging through the dresser drawers in her bedroom. Sapp confronted the man and asked him what he was doing, at which point the man quickly fled past her and out the back door. A few moments later, Sapp noticed that one of her bedroom windows was broken. Realizing that her home had been burglarized, she called the police.

Shortly thereafter, officers from the Effingham County Sheriff's Department arrived on the scene and searched the area but could not locate the intruder. However, during their investigation of Sapp's home, officers recovered a blood-stained screwdriver on top of the refrigerator after Sapp pointed it out to them and stated that it was not hers. In addition, the officers found another blood stain on the broken window in Sapp's bedroom. Subsequently, a crime-scene technician with the sheriff's department collected samples from both blood stains and transported them to the Georgia Bureau of Investigation's ("GBI") crime lab for DNA testing.

---

[1] *See, e.g., Powell v. State*, 310 Ga. App. 144, 144 (712 SE2d 139) (2011).

2

Ten months later, an investigator with the Effingham County Sheriff's Department received a report from the GBI Forensic Sciences Division, indicating that the DNA from the collected blood samples matched Crosby's DNA profile, which was already in CODIS[2] due to his previous convictions. After examining a photograph of Crosby and noting that he resembled the description of the intruder provided by Sapp, the investigator obtained a warrant to arrest Crosby and collect a DNA sample from him. A week later, officers arrested Crosby, obtained a DNA sample for testing, and ultimately determined that his DNA matched the samples collected from Sapp's broken window and the screwdriver found on top of her refrigerator.

Thereafter, Crosby was indicted on one count of burglary[3] and one count of possession of tools for the commission of burglary.[4] During Crosby's trial, Sapp testified about the burglary but admitted that she could not unequivocally identify Crosby as the intruder she saw on the night in question. Additionally, several law-

_____

[2] CODIS, the Combined DNA Indexing System, is a database of DNA profiles linked among the states through the Federal Bureau of Investigation.

[3] *See* Former OCGA § 16-7-1 (a) (1980). The statute was significantly amended in 2012. *See* Ga. L. 2012, p. 899, § 3-1.

[4] *See* OCGA § 16-7-20 (a).

3

enforcement officers testified regarding their investigation. Included among those officers was a forensic biologist with the GBI, who testified in considerable detail regarding her review of the testing of the DNA samples collected from the scene, her own testing of the DNA samples obtained from Crosby, and the fact that these samples matched.

After the State rested, Crosby informed the trial court that he would testify in his own defense. At that point, the State requested that it be allowed to impeach Crosby, pursuant to OCGA § 24-9-84.1 (a) (2), by introducing evidence that Crosby was convicted of burglary in 1996. The court immediately heard argument on the issue from both the State and Crosby before ultimately ruling to admit the conviction solely for impeachment purposes. Subsequently, Crosby testified. In doing so, he acknowledged his past conviction but claimed his innocence as to the subject charges and stated that he did not know how his screwdriver found its way into Sapp's home or why his blood was found on the broken bedroom window. Nevertheless, at the conclusion of his trial, the jury found Crosby guilty on both counts in the indictment.

Afterwards, Crosby obtained new counsel and filed a motion for new trial, in which he argued, *inter alia*, that his trial counsel rendered ineffective assistance by failing to object to the testimony about the DNA testing, which constituted hearsay

4

and violated his right to confrontation. The trial court held a hearing on Crosby's motion, during which Crosby's trial counsel testified, but ultimately the court denied it. This appeal follows.

1. Crosby contends that the evidence supporting his convictions was insufficient because the testimony of the GBI forensic biologist pertaining to the DNA samples connecting him to the crime constituted inadmissible hearsay and violated his right to confrontation under the Sixth Amendment to the United States Constitution.[5] We disagree.

At the outset, we note that when a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence.[6] Furthermore, in evaluating the sufficiency of the evidence, "we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[7] Consequently, the jury's verdict will

---

[5] *See* U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . .").

[6] *See Powell*, 310 Ga. App. at 144.

[7] *Joiner v. State*, 299 Ga. App. 300, 300 (682 SE2d 381) (2009); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

be upheld "[a]s long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[8] With these guiding principles in mind, we will now address Crosby's specific challenge to the sufficiency of the evidence.

As previously noted, during Crosby's trial, a GBI forensic biologist testified regarding her review of the testing of the DNA samples collected from the scene of the burglary and her own testing of the DNA samples obtained from Crosby after he was arrested. Specifically, the GBI biologist explained that the swab samples collected from the screwdriver and the broken window were initially tested by another GBI technician to confirm that the substance found on them was blood. And afterward, the samples were sent to a laboratory in Utah, which isolated the DNA from the blood and developed a DNA profile. Subsequently, the Utah lab returned the evidence and its analysis to the GBI, and the GBI biologist then reviewed the testing procedures employed, as well as the results, and uploaded the information into CODIS. The biologist further testified that once DNA samples were obtained from

---

[8] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (punctuation omitted).

6

Crosby, she personally tested those samples and determined that they matched the DNA collected from the blood on the screwdriver and the victim's bedroom window.

Although Crosby did not object to the GBI forensic biologist's testimony during trial, he now contends that her testimony regarding the testing performed by the GBI technician who initially tested the blood found on the screwdriver and the window, as well as the testing performed by the Utah lab, constituted inadmissible hearsay and is without probative value.[9] Citing *Melendez-Diaz v. Massachusetts*[10] and *Bullcoming v. New Mexico*,[11] Crosby further argues that his Sixth Amendment right to confrontation was violated because neither the GBI technician nor anyone from the

---

[9] *See Quarterman v. State*, 305 Ga. App. 686, 690 (1) (a) (700 SE2d 674) (2010) (noting that hearsay testimony is not only inadmissible but wholly without probative value, and, therefore, its introduction, even without objection, does not give it any weight or force whatsoever in establishing a fact).

[10] 557 U.S. 305, 311 (II) (129 SCt. 2527, 174 LE2d 314) (2009) (holding that the State's use of a forensic laboratory report violated the Confrontation Clause when there was no live witness available for cross-examination who was competent to testify as to the truth of the statements made in the report).

[11] ___ U.S. ___ (II) (B) (131 SCt. 2705, 180 LE2d 610) (2011) (holding that "surrogate testimony" of the "scientist who did not sign the certification or perform, observe, or review the testing procedures reported in the certification" violates the Confrontation Clause).

Utah lab testified at trial. But pretermitting whether Crosby waived review of these issues by failing to object during trial,[12] we find his contentions unavailing.

First, it is well established that "an expert may base his opinion on data collected by others" and that his or her "lack of personal knowledge does not mandate the exclusion of the opinion but, rather, presents a jury question as to the weight which should be assigned the opinion."[13] And here, rather than being a mere conduit for the GBI technician and the Utah lab's findings, the GBI forensic biologist reviewed the data and testing procedures to determine the accuracy of those findings. Thus, the GBI biologist's testimony regarding these findings was not inadmissible hearsay.[14] Furthermore, because the GBI biologist personally conducted much of the

---

[12] *See Sanders v. State*, 290 Ga. 445, 448 (3) (721 SE2d 834) (2012) (holding that failure to object to testimony on specific ground that it allegedly violated defendant's right of confrontation waived issue on appeal).

[13] *Dunn v. State*, 292 Ga. App. 667, 671 (1) (665 SE2d 377) (2008) (punctuation omitted); *see also Watkins v. State*, 285 Ga. 355, 358 (2) (676 SE2d 196) (2009) (stating that "[a]n expert may base her opinions on data gathered by others").

[14] *See Rector v. State*, 285 Ga. 714, 715-16 (4) (681 SE2d 157) (2009) (holding that toxicologist's testimony based on other doctor's findings was not hearsay because toxicologist reviewed the doctor's data and testing procedures to determine their accuracy); *Watkins*, 285 Ga. at 358 (2) (same); *Velazquez v. State*, 282 Ga. 871, 875 (3) (655 SE2d 806) (2008) ("Even when an expert's testimony is based on hearsay, the expert's lack of personal knowledge does not mandate exclusion of the opinion but merely presents a jury question as to the weight which should be

testing herself (reviewing and analyzing all of the testing procedures and data forming the basis of her opinion testimony at trial), she—unlike the expert in *Bullcoming*—was not acting as a mere surrogate for the GBI technician or the Utah lab.[15] Rather, she had a "substantial personal connection to the scientific [tests] at issue."[16] Accordingly, the GBI forensic biologist's testimony did not violate Crosby's Sixth Amendment Confrontation Clause right.[17]

---

accorded the opinion.").

[15] *Compare Bullcoming*, ___ U.S. at ___ (II) (B) (holding that "surrogate testimony" of the "scientist who did not sign the certification or perform, observe, or review the testing procedures reported in the certification" violates the Confrontation Clause).

[16] *Disharoon v. State*, 291 Ga. 45, 48 (727 SE2d 465) (2012).

[17] *See Leger v. State*, 291 Ga. 584, 592-93 (5) (732 SE2d 53) (2012) (holding that expert testimony regarding DNA evidence did not violate Confrontation Clause on the ground that expert did not perform all the steps in testing the DNA because expert supervised the testing, interpreted the data from the testing, and performed the ultimate analysis of the testing); *Disharoon*, 291 Ga. at 45 (same); *Carolina v. State*, 302 Ga. App. 40, 41-42 (690 SE2d 435) (2010) (holding that testimony of lab supervisor, rather than technician who tested drugs, was not inadmissible hearsay which violated Confrontation Clause because supervisor reviewed and interpreted the data prepared by technician); *see also Williams v. Illinois*, ___ U.S. ___ (132 SCt. 2221, 183 LE2d 89) (2012) (a plurality holding that the Confrontation Clause was not violated when an expert testified about her conclusions that were based upon a DNA report prepared by a contract laboratory, which she did not supervise).

2. Crosby also contends that the trial court erred in denying his claim that his trial counsel rendered ineffective assistance by failing to object to the GBI forensic biologist's testimony. We disagree.

In order to prevail on his claim of ineffective assistance of counsel, Crosby must show that his trial "counsel's performance was deficient and that the deficient performance so prejudiced [him] that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different."[18] Additionally, there is a strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct, and a criminal defendant must overcome this presumption.[19] Unless clearly erroneous, we will uphold a trial court's factual determinations with respect to claims of ineffective assistance of counsel; however, a trial court's legal conclusions in this regard are reviewed *de novo*.[20]

Similar to the contentions in his first enumeration of error, here, Crosby argues that his trial counsel rendered ineffective assistance by failing to object to the GBI

---

[18] *Chapman v. State*, 273 Ga. 348, 349-50 (2) (541 SE2d 634) (2001); *see Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt. 2052, 80 LE2d 674) (1984).

[19] *Chapman*, 273 Ga. at 350 (2).

[20] *Henderson v. State*, 303 Ga. App. 898, 898 (1) (695 SE2d 334) (2010).

10

biologist's testimony on the grounds that it constituted hearsay and violated his Confrontation Clause rights. However, as we held in Division 1, *supra*, this testimony did not constitute inadmissible hearsay or violate Crosby's right of confrontation. Thus, any objection to the GBI biologist's testimony would have been lacking in merit. And as this Court has repeatedly noted, the failure to "pursue a futile objection does not amount to ineffective assistance."[21] Accordingly, Crosby failed to show that his trial counsel rendered ineffective assistance.

3. Crosby further contends that the trial court erred in admitting evidence of a 1996 burglary conviction for impeachment purposes without making the specific findings required by OCGA § 24-9-84.1 (a) (2).[22] But before addressing Crosby's

---

[21] *Ventura v. State*, 284 Ga. 215, 218 (4) (663 SE2d 149) (2008).

[22] Although the subject burglary conviction occurred in 1996, it is undisputed that Crosby was not released from imprisonment for that conviction until August 31, 2007. Given that the conviction was introduced into evidence during the trial on May 20, 2011, the parties agreed that the conviction was not more than ten years old as contemplated by OCGA § 24-9-84.1 (b) ("Evidence of a conviction under subsection (a) of this Code section is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness or the defendant from the confinement imposed for that conviction, whichever is the later date. . . ."). Thus, the parties also agreed that OCGA § 24-9-84.1 (a) (2) provided the proper context for determining whether the conviction was admissible. *See Clay v. State*, 290 Ga. 822, 835 (3) (A) (725 SE2d 260) (2012) (holding that the date the evidence of the prior conviction was introduced, constituted the end point for determining whether ten years had elapsed since defendant's prior convictions).

11

specific contention, we first note that this Court will not disturb a trial court's determination regarding impeachment of a criminal defendant pursuant to OCGA § 24-9-84.1 (a) (2) unless the trial court has abused its discretion.[23]

In this matter, as previously noted, after Crosby informed the trial court that he would testify in his own defense, the State requested that it be allowed to impeach Crosby, pursuant to OCGA § 24-9-84.1 (a) (2), by introducing evidence that Crosby was convicted of a burglary in 1996. Consequently, outside the presence of the jury, the trial court conducted a hearing, during which the State argued the probative value of the evidence would outweigh any potentially prejudicial effect in that it was relevant to Crosby's credibility. Crosby objected and argued that introduction of the 1996 burglary would be "detrimental to [his] position . . . ." Nevertheless, the trial court ruled on the record that the 1996 burglary conviction was admissible, stating "[it] would rule that [the conviction] would be admissible for purposes of impeachment and impeachment only." And later, the court specifically instructed the jury that the conviction could only be considered for that purpose.

On appeal, Crosby argues that OCGA § 24-9-84.1 (a) (2) requires that the trial court make specific findings on the record as to whether the probative value of

_____

[23] *See Quiroz v. State*, 291 Ga. App. 423, 429 (4) (662 SE2d 235) (2008).

12

introducing a previous conviction as evidence outweighs the prejudicial effect of doing so and that, here, the trial court failed to make such findings. Turning to the specific code section at issue, OCGA § 24-9-84.1 (a) (2) provides:

> For the purpose of attacking the credibility of a witness or of the defendant, if the defendant testifies: Evidence that the defendant has been convicted of a crime shall be admitted if the crime was punishable by death or imprisonment of one year or more under the law under which the defendant was convicted if the court determines that the probative value of admitting the evidence substantially outweighs its prejudicial effect to the defendant . . . .[24]

In considering the extent of the statute's requirements, we have held that "the trial court is required to make express findings when balancing the probity of a prior felony conviction against its prejudicial effect."[25] More recently, the Supreme Court of Georgia has held that although

> a trial court must make an on-the-record finding that the probative value of admitting a prior conviction substantially outweighs its prejudicial effect, we discern no requirement in the language of OCGA § 24-9-84.1

---

[24] OCGA § 24-9-84.1 (a) (2).

[25] *Lawrence v. State*, 305 Ga. App. 199, 202 (3) (699 SE2d 406); *see Quiroz*, 291 Ga. App. at 428 (4) (holding that requiring the trial court to balance the probity of a prior felony conviction against its prejudicial effect requires that such findings be made expressly).

13

(a) (2) that the trial court *must* list the specific factors it considered in ruling on the probity of convictions that are not more than ten years old.[26]

In this case, after hearing argument from both parties as to whether the probative value of the conviction outweighed the prejudicial effect, the trial court simply stated that the conviction would be admitted for impeachment purposes without further explanation. Thus, we cannot determine whether the trial court in this case "engaged in any meaningful analysis of the relevant factors or whether the court balanced the probative value against the prejudicial effect to the accused."[27] Accordingly, we are constrained to find that the trial court erred.[28]

---

[26] *Clay*, 290 Ga. at 836-37 (3) (B) (citation omitted).

[27] *Quiroz*, 291 Ga. App. at 428-29 (4) (punctuation omitted).

[28] *See Lawrence*, 305 Ga. App. at 202-03 (3) (holding that trial court erred in admitting defendant's prior conviction under OCGA § 24-9-84.1 (a) (2) because it failed to apply the proper standard when it found that the conviction would be more probative than prejudicial instead of specifying whether the probative value of admitting the evidence *substantially* outweighs its prejudicial effect); *Quiroz*, 291 Ga. App. at 428-29 (4) (holding that trial court erred in admitting prior conviction under OCGA § 24-9-84.1 (a) (2) when, despite holding a hearing on the issue, trial court simply stated on the record that it would allow the evidence).

However, such an error does not require a new trial if the error is harmless.[29] And here, despite the fact that the victim could not positively identify Crosby as the intruder she saw on the night of the burglary, Crosby generally matched the description of the intruder that the victim provided to law-enforcement officers. More importantly, Crosby's DNA matched that obtained from the blood on the screwdriver found inside the burglary victim's home and from the blood found on the broken window in the victim's bedroom. Given these circumstances, we find that there is no reasonable probability that the results of the trial would have differed if the evidence of Crosby's 1996 burglary conviction had been excluded.[30]

For all the foregoing reasons, we affirm Crosby's convictions.

*Judgment affirmed. Phipps, P. J., concurs. Ellington, C. J., concurs in judgment only.*

---

[29] *See Lawrence*, 305 Ga. App. at 203 (3) (holding that trial court's failure to comply with requirements of OCGA § 24-9-84.1 (a) (2) was harmless given that inculpatory evidence against defendant was overwhelming).

[30] *See Holden v. State*, 314 Ga. App. 36, 39 (2) (722 SE2d 873) (2012) (holding that admission of improper similar-transaction evidence was harmless given that the evidence of defendant's guilt, including DNA evidence, was overwhelming); *Lawrence*, 305 Ga. App. at 203 (3).