**WHOLE COURT**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 15, 2014**

# In the Court of Appeals of Georgia

A14A0320. JOHNSON v. THE STATE.                    DO-011 C

DOYLE, Presiding Judge.

Steven Mark Johnson was indicted for rape[1] and aggravated assault.[2] A Chatham County jury found him guilty of rape, but not guilty of aggravated assault. Johnson appeals the subsequent denial of his motion for new trial, arguing that the trial court erred by (1) denying his motion for a mistrial based on the admission of evidence that was not timely disclosed by the State; (2) admitting hearsay testimony; (3) admitting two prior convictions for impeachment purposes; and (4) sustaining the State's objection to his closing argument. Johnson also argues that he received ineffective assistance of counsel. We affirm, for the reasons that follow.

---

[1] OCGA § 16-6-1 (a).

[2] OCGA § 16-5-21 (a) (2).

On appeal from a criminal conviction, the evidence is viewed in a light most favorable to the verdict. We do not weigh the evidence or determine witness credibility but only determine whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[3] This same standard applies to our review of the trial court's denial of [the defendant's] motion for new trial. The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[4]

So viewed, the evidence shows that on March 23, 2009, Johnson was living in the home of R. L., his ex-girlfriend and mother of his son; R. L.'s adult daughter, L. L. also lived in the home. At approximately 1:00 a.m., L. L. was at home alone with Johnson when he came out of the bedroom and directed her to rise from the couch. When L. L. asked him why, Johnson grabbed her by her neck and then tightened his hand until she "[saw] white lights," telling her, "Get up before I kill you." He then forced L. L. to go into her mother's bedroom and lie face-down on the bed, pulled down her pants, and penetrated her vagina with his penis. Afterwards, Johnson

---

[3] 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[4] (Footnotes omitted.) *Stephens v. State*, 247 Ga. App. 719 (545 SE2d 325) (2001).

instructed L. L. to clean herself. L. L. went into the bathroom for a short period and then ran to a nearby friend's home.

L. L. called her mother, screaming, and told her that Johnson had raped her. R. L. called 911, and state patrol officers responded to R. L.'s home and made contact with Johnson. Johnson seemed "very uneasy" and nervous, and while the officers were present, he spoke to R. L. on the telephone, telling her that "he was sorry." The officers left Johnson at the house and then responded to the home to which L. L. had fled following the incident.

When they arrived, L. L. was "curled up on the floor, crying" and was initially "too hysterical" to respond to questioning. L. L. was transported to the hospital, where she told the treating physician that she had neck pain and "had been choked and sexually assaulted." The doctor observed "four[,] small[,] superficial scratches" on L. L.'s neck, and medical personnel performed a sexual assault examination. Sperm DNA collected from cervical swabs of L. L. matched that of Johnson.

L. L. told police that Johnson choked her, threatened to kill her, and raped her. The police then returned to R. L.'s house, arrested Johnson, and took him to police headquarters for questioning. Johnson was cooperative, repeatedly asked if L. L. was okay, asked "I [did not] hurt her, did I?," and stated that he had blacked out and did

not know what happened. Johnson also told police, "I feel bad about this s- -t here. How did I get myself into this s- -t here?"

During the 2012 trial, the State introduced a 2009 letter from Johnson to R. L. in which Johnson apologized, explaining that he had "blacked out" after consuming drugs and alcohol. Johnson also wrote that because he had erectile dysfunction, there was "no way [he] could have penetrated [L. L.'s] vagina," and "therefore, there's no '[r]ape.'" At trial, Johnson admitted that he had sexual intercourse with L. L. on the night in question, but he stated that it was consensual, and he denied hitting or choking her. According to Johnson, L. L. came into his room, woke him, and removed her clothes. Johnson testified that L. L. did not seem upset afterwards; he gave her money, but he "guess[ed] it [was not] the right amount or something."

At the conclusion of the evidence, the jury found Johnson not guilty of aggravated assault and guilty of rape. Johnson was sentenced as a recidivist to life without parole. The trial court denied his subsequent motion for new trial, and this appeal followed.

1. *Mistrial.* Johnson argues that the trial court erred by denying his motion for mistrial based on the admission of his 2009 letter to R. L. This argument presents no basis for reversal.

4

At trial, after the victim testified, the State advised the trial court that R. L. had just produced a letter that Johnson had written her.[5] Defense counsel objected to the introduction of the letter based on the State's failure to notify Johnson about it ten days prior to trial as required by OCGA § 17-16-4 (a) (1). While this Code section requires the State to produce no later than ten days prior to trial any relevant written or recorded statements made by the defendant *"within the possession, custody, or control of the state or prosecution . . . ,"*[6] OCGA § 17-16-4 (c) contemplates the discovery of additional evidence less than ten days before or during trial, requiring the State to promptly produce it to the defense.

Here, after reviewing the letter and discussing it with Johnson, defense counsel conceded there was no evidence of bad faith on the part of the State because it complied with OCGA § 17-16-4 (c) by promptly producing the newly discovered letter immediately upon receipt. Nonetheless, defense counsel argued that admission of the letter would prejudice Johnson because it

---

[5] R. L.'s daughter-in-law gave the letter to an employee in the district attorney's office in the hallway outside the courtroom during the trial, less than 30 minutes before the prosecutor raised the issue in court. According to R. L., she had not previously disclosed the letter or its contents to anyone in the district attorney's office.

[6] (Emphasis supplied.) OCGA § 17-16-4 (a) (1).

5

permeate[d] every aspect of preparation of the case, from the investigative phase, to the preparation for trial phase, to every decision made during the course of the trial and in preparation for trial,[7] as far as whether the defendant would testify, whether we call any other witnesses of our own. It simply is too big of a matter to say, well, they became aware of it[,] and then [30] minutes later it was provided.[8]

Defense counsel then moved for exclusion of the evidence or a mistrial. Although the trial court denied the motion, it released the jury for the remainder of the day in the early afternoon and did not reconvene the trial until 10:00 a.m. the following morning to allow defense counsel sufficient time to review and/or adjust his trial strategy in light of Johnson's letter to R. L.

OCGA § 17-16-6, which sets forth the proper remedies for discovery violations, provides:

If at any time during the course of the proceedings it is brought to the attention of the court that the [S]tate has failed to comply with the

_____

[7] During opening statements, defense counsel stated that "Johnson is not guilty of rape. Whatever sex happened . . . was between two consenting adults."

[8] Defense counsel further objected to prejudicial information contained in the letter, including bad character evidence regarding Johnson's prior incarceration. Portions of the letter, however, were redacted prior to the publication of the letter to the jury, and Johnson does not argue this issue on appeal. Nor does Johnson attempt to explain how the State's disclosure of a letter that he wrote was a surprise.

6

requirements of this article, the court may order the state to permit the discovery or inspection, interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the [S]tate from introducing the evidence not disclosed or presenting the witness not disclosed, or may enter such other order as it deems just under the circumstances. . . .

While the trial court could have granted a mistrial had it deemed it just under the circumstances,[9] it was not an abuse of discretion to deny Johnson's motion for mistrial and instead grant a continuance to permit the defense time to adjust his trial strategy in light of the letter, particularly given that Johnson wrote the letter.[10]

---

[9] Our Supreme Court has held that "even if there is no showing of bad faith and prejudice, the trial court may declare a mistrial upon a determination that it is just under the circumstances." *Tubbs v. State*, 276 Ga. 751, 753 (2) (583 SE2d 853) (2003). We disapprove language in any case that is inconsistent with this holding in *Tubbs*, including *Gore v. State*, 277 Ga. App. 635, 640 (3) (627 SE2d 198) (2006) (stating that "even if the State had breached its discovery obligation, OCGA § 17-16-6 authorizes a mistrial only if the defendant shows prejudice and bad faith."). To the extent that it can be read to require a showing of bad faith and prejudice in order to grant a mistrial upon a discovery violation, we also disapprove language in *Johnson v. State*, 281 Ga. App. 455, 457 (1) (636 SE2d 178) (2006), which cites *Gore*, 277 Ga. App. at 640 (3).

[10] See *Glenn v. State*, 278 Ga. 291, 296 (5) (602 SE2d 577) (2004); *Day v. State*, 302 Ga. App. 883, 884 (1) (691 SE2d 920) (2010); *Dixon v. State*, 252 Ga. App. 385, 387 (3) (556 SE2d 480) (2001).

2. *Victim's prior consistent statement.* Johnson contends that the trial court erred by allowing testimony by a state trooper regarding L. L.'s out-of-court statements to him.

During direct examination of the trooper, the State asked him whether L. L. had told him what happened to her. Defense counsel objected on the basis that such testimony was inadmissible hearsay, but the trial court overruled the objection and permitted the trooper to testify that L. L. told him that Johnson had raped her and to relay the details of her version of events. Admission of the trooper's testimony was erroneous.

> A witness's prior consistent statement is admissible only where: (1) the veracity of a witness's trial testimony has been placed in issue at trial; (2) the witness is present at trial; and (3) the witness is available for cross-examination. A witness's veracity is placed in issue so as to permit the introduction of a prior consistent statement if affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross-examination.[11]

---

[11] (Punctuation omitted.) *Duggan v. State*, 285 Ga. 363, 366 (2) (677 SE2d 92) (2009).

"[T]o be admissible to refute the allegation of [fabrication], the prior statement must predate the alleged fabrication, influence, or motive."[12]

Here, although defense counsel argued that L. L. had consensual sex with Johnson and then immediately fabricated the rape allegation because of guilt and concern about how her mother would feel, there was no affirmative charge of recent fabrication. The State did not elicit testimony from the trooper about L. L.'s statements to rehabilitate her after the defense attacked her veracity; instead, the State elicited the testimony during its direct examination of the witness simply to bolster the victim's credibility. Thus, the trial court erred by admitting the trooper's testimony regarding L. L.'s prior consistent statements.[13]

Nevertheless, we conclude that admission of the trooper's testimony does not require reversal. "The erroneous admission of [a] witness's hearsay statement is reversible error if it appears likely that the hearsay contributed to the guilty verdict."[14] Here, the State also introduced the unchallenged testimony of the emergency room

---

[12] (Punctuation omitted.) *Moon v. State*, 288 Ga. 508, 511 (4) (705 SE2d 649) (2011), quoting *Mister v. State*, 286 Ga. 303, 306 (4) (687 SE2d 471) (2009).

[13] See *Baugh v. State*, 276 Ga. 736, 738-739 (2) (585 SE2d 616) (2003).

[14] (Punctuation omitted.) Id. at 739 (2).

9

physician R. L., that L. L. stated that she had been raped and choked.[15] Given this evidence, along with the scratches on L. L.'s neck, the conflicts between Johnson's letter to L. L. and his trial testimony, and the DNA evidence, it is unlikely that the erroneously admitted hearsay contributed to the verdict.[16]

3. *Prior convictions.* Johnson also argues that the trial court erred by allowing the State to introduce two prior convictions for impeachment purposes under former OCGA § 24-9-84.1.[17]

(a) *Burglary.* Johnson challenges the admission of his 2004 conviction for burglary, for which he was serving a prison sentence at the time of the 2012 trial in

---

[15] See former OCGA § 24-3-4 ("Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment shall be admissible in evidence."); *Miller v. State*, 325 Ga. App. 764, 772 (4) (c) (754 SE2d 804) (2014); *Miller v. State,* 194 Ga. App. 533, 534 (2) (a) (390 SE2d 901) (1990).

[16] See *Character v. State*, 285 Ga. 112, 120 (6) (674 SE2d 280) (2009); *Grant v. State*, 326 Ga. App. 121, 129 (4) (756 SE2d 255) (2014); *Donald v. State*, 312 Ga. App. 222, 226-227 (2) (718 SE2d 81) (2011).

[17] Because this case was tried before 2013, the new Evidence Code does not apply. See Ga. L. 2011, pp. 99, 214, § 101. For impeachment by prior convictions under the new Evidence Code, see OCGA § 24-6-609 (a) (1).

the instant case, arguing that it was unfairly prejudicial and created a danger that the jury would consider it for an improper purpose.

Pursuant to former OCGA § 24-9-84.1 (a) (2), "evidence of a defendant's felony conviction that was less than ten years old was admissible if the probative value of the evidence *substantially* outweighed its prejudicial effect to the defendant."[18] In *Clay v. State*,[19] our Supreme Court recognized five factors that trial courts should consider when conducting the balancing analysis:

> (1) the nature, i.e., impeachment value of the crime; (2) the time of the conviction and the defendant's subsequent history; (3) the similarity between the past crime and the charged crime, so that admitting the prior conviction does not create an unacceptable risk that the jury will consider it as evidence that the defendant committed the crime for which he is on trial; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue.[20]

The trial court's finding that the probative value of the prior conviction outweighed its prejudicial effect must be made on the record, but there is "no requirement in the

---

[18] (Emphasis in original.) *Waye v. State*, ___ Ga. App. ___, ___ (3) (756 SE2d 287) (2014).

[19] 290 Ga. 822 (725 SE2d 260) (2012).

[20] Id. at 835 (3) (B).

language of [former] OCGA § 24-9-84.1 (a) (2) that the trial court *must* list the specific factors it considered in ruling on the probity of convictions that are not more than ten years old."[21]

Here, however, after hearing argument from both sides regarding whether the probative value of the burglary conviction outweighed the prejudicial effect, the trial court simply granted the State's motion to admit it, without further explanation.[22] "Thus, we cannot determine whether the trial court in this case engaged in any meaningful analysis of the relevant factors or whether the court balanced the probative value against the prejudicial effect to [Johnson]. Accordingly, we are constrained to find that the trial court erred."[23]

Nevertheless, "such an error does not require a new trial if the error is harmless."[24] In this case, L. L., who was hysterical when police arrived, made an

---

[21] (Emphasis in original.) Id. at 836-837 (3) (B).

[22] Although the trial court subsequently entered a post-trial order with regard to the prior conviction for terroristic threats, it did not do so for the burglary conviction.

[23] (Punctuation and footnote omitted.) *Crosby v. State*, 319 Ga. App. 459, 465-466 (3) (735 SE2d 588) (2012) (physical precedent only), quoting *Quiroz v. State*, 291 Ga. App. 423, 428-429 (4) (662 SE2d 235) (2008).

[24] Id. at 466 (3).

12

immediate outcry to her mother, multiple officers, and the emergency room physician, who observed minor scratches on L. L.'s neck, consistent with her allegation that Johnson grabbed her neck and choked her before raping her. Further, the sexual assault examination revealed the presence of Johnson's DNA on L. L.'s cervical swabs taken the night of the alleged rape. Given these circumstances, "we find that there is no reasonable probability that the results of the trial would have differed if the evidence of [Johnson's 2004] burglary conviction had been excluded."[25]

(b) *Terroristic threats*. Johnson challenges the admission of his 1989 conviction for terroristic threats. Pursuant to former OCGA § 24-9-84.1 (b), evidence of a defendant's conviction older than ten years was only admissible if the court determined

> in the interest of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. [A] trial court must make an on-the-record finding of the specific facts and circumstances upon which it relies in determining that the probative value of a prior conviction that is more than ten years old substantially outweighs its prejudicial effect before

---

[25] Id., citing *Holden v. State*, 314 Ga. App. 36, 39 (2) (722 SE2d 873) (2012). See also *Lawrence v. State*, 305 Ga. App. 199, 203 (3) (699 SE2d 406) (2010).

admitting evidence of the conviction for impeachment purposes under [former] OCGA § 24-9-84.1 (b).[26]

"In determining the admissibility of similar crimes evidence, a trial court exercises its discretion in deciding whether the probative value of the evidence outweighs the danger of any prejudicial effect to the defendant."[27]

Here, although the trial court did not make such an on-the-record finding during the trial, it entered an order after sentencing, specifically indicating therein that it considered the five factors set forth in *Clay*. The court concluded that given the nature of the charges in this case and the fact that the credibility of the victim and the defendant were central to the issues, the probative value of the terroristic threats conviction substantially outweighed any prejudicial effect. The trial court also noted that although the State also sought to introduce two other more "serious" convictions that were older than ten years, the trial court decided to admit only the terroristic threats conviction in order to limit the risk of prejudice to Johnson. Under these

---

[26] (Punctuation and citation omitted.) *Clay*, 290 Ga. at 834 (3) (A), 837-838 (3) (B).

[27] *Newsome v. State*, 289 Ga. App. 590, 594 (2) (657 SE2d 540) (2008).

14

circumstances, we find no abuse of discretion in the trial court's admission of the prior terroristic threats conviction for impeachment purposes.[28]

4. *Closing arguments.* Next, Johnson argues that the trial court erred by sustaining the State's objection during defense counsel's closing statement. We find no basis for reversal.

During closing, defense counsel stated, "Throughout history, there have been numerous famous instances of false cries of rape. We don't have to look back many years ago to remember when the Duke lacrosse players were all charged with rape –". The State objected, arguing that "[t]he law restricts attorneys, in arguments, from talking about the facts of specific famous cases, and that's where we were going," and the trial court sustained the objection.

---

[28] See *McNabb v. State*, 292 Ga. App. 395, 397-398 (1) (664 SE2d 800) (2008). We reject Johnson's argument that the prior terroristic threats conviction – a crime punishable by imprisonment of one year or more pursuant to OCGA § 16-11-37 (c) – was inadmissible because it was not a crime involving dishonesty or the making of a false statement; there is no such requirement in subsections (a) (2) or (b) of former OCGA § 24-9-84.1. See *Walker v. State*, 294 Ga. 752, 755-756 (2) (b) (755 SE2d 790) (2014).

"'An attorney is entitled to argue all reasonable inferences arising from the evidence presented in the trial.'"[29]

Analogizing a defendant or a defendant's case to another well-known defendant or case is permissible during argument if the analogy is supported by facts in evidence. We have long held that counsel may make use of well-established historical facts in his argument and make full use of illustrations as long as he does not introduce extrinsic and prejudicial matters which have no basis in the evidence in the case.[30]

Here, Johnson's defense was that the sex was consensual and that L. L. fabricated the rape charges. Thus, defense counsel's analogy of this case to a case involving false allegations of rape was permissible, and the trial court erred by sustaining the State's objection thereto.[31]

Despite the trial court's error, however, Johnson has failed to establish harm.

---

[29] *Palma v. State*, 280 Ga. 108, 110 (1) (624 SE2d 137) (2005), quoting *Glenn v. State*, 279 Ga. 277, 279 (2) (b) (612 SE2d 478) (2005).

[30] (Punctuation and citation omitted.) *Carr v. State*, 267 Ga. 547, 555 (7) (a) (480 SE2d 583) (1997), citing *Robinson v. State*, 257 Ga. 194 (4) (357 SE2d 74) (1987).

[31] See *Head v. State*, 276 Ga. 131, 135 (6) (575 SE2d 883) (2003).

16

A presumption of harm requiring the grant of a new trial accompanies the abridgement of the right to make a closing argument, and that presumption is overcome when the denial of the right is not complete and only in those extreme cases in which the evidence of a defendant's guilt is so overwhelming that it renders any other version of events virtually without belief.[32]

Here, Johnson's right to make a closing argument was not completely abridged; defense counsel repeatedly argued that the victim falsely accused Johnson of rape based on her shame and guilt resulting from her voluntary sexual activity with her mother's boyfriend. And the court permitted counsel to compare the case with *To Kill a Mockingbird* and a biblical story involving false allegations of rape.[33] In light of this and considering the DNA evidence, the victim's testimony and immediate outcry, the scratches on her neck, and the inconsistencies in Johnson's trial testimony and his statements in the letter to the victim's mother, we conclude that the evidence against

---

[32] (Punctuation omitted.) *Palma*, 280 Ga. at 110 (2), quoting *Hendricks v. State*, 277 Ga. 61, 63 (3) (586 SE2d 317) (2003).

[33] See *Head*, 276 Ga. at 135 (6).

17

Johnson was overwhelming, and the trial court's error in limiting his closing argument was therefore harmless.[34]

5. *Ineffective assistance of counsel*. Under *Strickland v. Washington*,[35]

> [i]n order to establish ineffectiveness of trial counsel, appellant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. There is a strong presumption that the performance of trial counsel falls within the wide range of reasonable professional assistance. The reasonableness of the conduct is viewed at the time of trial and under the circumstances of the case. In reviewing a lower court's determination of a claim of ineffective assistance of counsel, we give deference to the trial court's factual findings, which are upheld on appeal unless clearly erroneous; however, we review the lower court's legal conclusions de novo.[36]

"If an appellant fails to meet his burden of proving either prong of the *Strickland* test, the reviewing court need not examine the other prong. The trial court's determination

---

[34] See *Head*, 276 Ga. at 136 (6); *Hayes*, 268 Ga. at 813-814 (7). Compare *Palma*, 280 Ga. at 110 (1).

[35] 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

[36] (Citations and punctuation omitted.) *Williams v. State*, 277 Ga. 853, 857 (6) (596 SE2d 597) (2004).

that an accused has not been denied effective assistance of counsel will be affirmed on appeal unless that determination is clearly erroneous."[37]

(a) Johnson argues that he was denied effective assistance of trial counsel because counsel failed "to make all of the proper arguments" or to remind the court thereof in support of his motion for a mistrial following the admission of his letter to R. L. As we concluded in Division 1, the trial court did not abuse its discretion by denying the motion for mistrial. "[I]t is not ineffective assistance for trial counsel to fail to make a meritless objection."[38] Thus, Johnson has failed to demonstrate that trial counsel's performance was deficient.[39]

(b) Johnson contends that trial counsel was ineffective for failing to object to a detective's hearsay testimony regarding the victim's out-of-court statements. As it did with the trooper (see Division 2), the State asked another of its witnesses, a detective, what L. L. told him had happened to her. Trial counsel did not object to the

---

[37] (Punctuation and citations omitted.) *Roberts v. State*, 322 Ga. App. 659, 664 (3) (745 SE2d 850) (2013).

[38] Id. at 665 (3) (d).

[39] See id.

detective's testimony, and the detective testified in detail regarding L. L.'s statements regarding the rape.

As we concluded in Division 2 with regard to the trooper's testimony, admission of L. L.'s prior consistent statement to the detective was erroneous under the former version of Georgia's Evidence Code, given the lack of affirmative charges of recent fabrication, improper influence, or improper motive; therefore, trial counsel was deficient by failing to object to the testimony. The fact that two separate witnesses testified regarding the victim's prior consistent statements is particularly troublesome. Nevertheless, Johnson has failed to demonstrate that "a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different."[40] The evidence, including L. L.'s outcry immediately after the rape, her statement to the emergency room doctor, the scratches on her neck, the DNA evidence, and Johnson's subsequent letter to her (as compared to his trial testimony)

---

[40] (Punctuation omitted.) *Williams v. State*, ___ Ga. App. ___, ___ (3) (b) (Case No. A14A0347, decided May 6, 2014) (recognizing that "[when] determining whether the admission of evidence about [a witness's] prior consistent statements contributed to the verdict, we may not rely on the fact that he gave testimony at trial that was consistent with the prior statement that should not have been introduced, as the very nature of the error in admitting the prior consistent statement is that it is repetitive of that to which he has testified.") (punctuation omitted).

constituted overwhelming evidence of guilt. Thus, Johnson has failed to demonstrate prejudice.[41]

(c) Similarly, Johnson argues that trial counsel was ineffective by failing to preserve his objections to the introduction of the two prior convictions admitted for impeachment purposes. For the reasons explained in Division 3, the admission of the convictions was harmless, and therefore Johnson has failed to establish prejudice.[42]

(d) Johnson maintains that trial counsel was ineffective by failing to object to the trial court's limiting instruction regarding admission of his prior convictions. Specifically, Johnson alleges that the trial court read the entire pattern jury instruction, improperly including language instructing the jury that it could consider the prior convictions as they may relate to the required element of conviction of a felony, instead of restricting the jury's consideration of the convictions to the issue of impeachment. Pretermitting whether trial counsel's failure to object to the instruction was deficient, Johnson "has failed to establish that but for such objection

---

[41] See *Lynch v. State*, 291 Ga. 555, 557 (2) (b) (731 SE2d 672) (2012); *Williams*, ___ Ga. App. at ___ (3) (b).

[42] See id. at 665 (3) (d).

21

there was a reasonable probability that the outcome of the trial would have been different."[43]

*Judgment affirmed. Phipps, C. J., Andrews, P. J., Barnes, P. J., Ellington, P. J., Miller, Dillard, McFadden, Boggs, Ray, Branch and McMillian, JJ., concur.*

---

[43] Id. at 665 (3) (c).