**FOURTH DIVISION**
**RAY, MCMILLIAN**
**and PETERSON, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 28, 2016**

# In the Court of Appeals of Georgia

A15A2107. FRAZIER v. THE STATE.

McMILLIAN, Judge.

In October 2012, a jury convicted Steven Frazier of one count of rape and one count of false imprisonment. Frazier appeals from the denial of his motion for new trial, asserting that the trial court erred in allowing the State to impeach him with a prior rape conviction and that he received ineffective assistance of counsel. For the following reasons, we affirm.

Construed most strongly in support of the verdict, the evidence at trial showed that late in the evening of May 30, 1998, M. O. and her cousin were in their home watching television when M. O. received a call from her boyfriend. He asked M. O. to come over to his house, and because she did not have a car, M. O. called for a taxi. While waiting for the taxi to arrive, she noticed a white Ford pickup truck parked near

her house. When the taxi did not arrive, M. O. decided to ask the driver of the truck, later identified as Frazier, if he would be willing to take her to her boyfriend's house for $20, and he agreed.

Frazier told M. O. that he needed to stop for gas first, but instead drove down a gravel road to a secluded, wooded area. He demanded that she take her clothes off and told her that if she tried anything, he would kill her. Fearing for her life, M. O. pulled her pants down, and Frazier forcibly had sex with her twice over the course of several hours. M. O. tried to escape, but Frazier grabbed her and put his hands around her neck, scratching her, and forced her back into the truck. She cried and pleaded with him to stop and not to hurt her, but he told her, "Shut up, bitch" and threatened once again to kill her if she made any kind of move. At one point during the night, Frazier permitted M. O. to exit the truck in order to relieve herself, and she secretly left her underwear on the ground before returning.[1] When the sun started to rise, Frazier drove M. O. to a nearby gas station and dropped her off after warning her not to say anything.

---

[1] She later identified them when she returned to the location with police.

M. O. walked home and immediately told her cousin that she had been raped by the man in the truck from the night before.[2] Officer Anthony Levester with the Atlanta Police Department arrived at M. O.'s house at approximately 7:00 a.m. in response to a 911 rape call. There, M. O. told him that the man who raped her was driving an older model Ford truck and was a heavyset man, approximately thirty years old and six feet tall or taller. She also described the area he had taken her to, and Officer Levester was able to locate the area down an isolated dirt road. He then contacted Investigator Joy Paradise, a sex crimes investigator who met them at the location on Meador Avenue before taking M. O. to Grady Hospital where she underwent a sexual assault examination.

At trial, M. O.'s cousin testified that when the taxi never arrived that night, she and M. O. walked to the truck parked nearby to ask if he was with the cab company. And the next time she saw M. O., the following morning, she was hysterical and crying and told her that the man in the truck had raped her. M. O.'s boyfriend at the time testified at trial that he had called M. O. around 12:30 that night and told her he would pay for her cab ride if she would come over to his house. He was not able to reach her again until the following day when she told him that she had been raped

_____

[2] M. O. also identified Frazier at trial as the man who had raped her.

trying to go see him. Dr. Vonda Ware, who treated M. O. at Grady Hospital, testified that she observed recent scratches on M. O.'s neck and behind her right ear, as well as scratches on both of her shoulders and her left knee. And during the internal examination, she observed lacerations to M. O.'s hymen, consistent with trauma to the area. Dr. Ware also collected samples for analysis.

Stephanie Fowler, a forensic DNA analyst with the GBI, testified that the GBI received the sample in M. O.'s case and developed a male DNA profile from the spermatozoa found in the sample and uploaded the profile into the CODIS database.[3] In late 2007 or early 2008, a CODIS match indicated that the individual was connected to another victim, J. H. However, there was no known identity associated with that sample, either. Then, in 2010, CODIS revealed a DNA match between Frazier and the sample taken in M. O.'s case. Frazier was subsequently arrested and proceeded to trial in 2012.

The State also presented the testimony of J. H. as similar transaction evidence. J. H. testified that one night in August 2007, while she was walking to the store, a man driving a white truck stopped and asked if she wanted to split a six-pack of beer. After she got into the truck, the man drove her to a dirt road where he demanded that

[3] CODIS stands for the Combined DNA Index System.

4

she remove her clothes and raped her repeatedly over the course of several hours.[4] She pleaded with him to stop, but he told her to shut up. He eventually let her go, and she took off running and called the police.

Frazier testified in his own defense and explained that in 1998 he was suffering from addiction, and on the night in question, he was searching for crack cocaine when he found M. O. soliciting on Jonesboro Road. M. O. agreed to have sex with him in exchange for crack, and after they smoked crack together, they engaged in consensual sex.[5] According to Frazier, M. O. then asked him for $50 and a ride to Perry Homes. When he refused, she walked away.

1. In his first enumeration of error, Frazier asserts that the trial court erred in allowing the State to impeach him with a 1979 rape conviction because it failed to make the proper findings of the specific facts and circumstances explaining how the conviction's probative value outweighed its substantial prejudice. We find no basis for reversal.

---

[4] The location reported by J. H. was within one mile of the location reported by M. O.

[5] Both responding police and Dr. Ware testified that M. O. was not impaired that morning.

Former OCGA § 24-9-84.1 (b), in effect at the time of Frazier's 2012 trial,[6] provided in pertinent part:

> Evidence of a conviction under subsection (a) of this Code section is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness or the defendant from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interest of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effects.

And a trial court is required "to make an on-the-record finding of the specific facts and circumstances upon which it relies in deciding that the probative value of a prior conviction that is more than ten years old substantially outweighs its prejudicial effect . . ." (Citation omitted.) *Hites v. State*, 296 Ga. 528, 530, n.4 (2) (769 SE2d 364) (2015).

We will not disturb a trial court's determination regarding the admissibility of a prior conviction for purposes of impeachment absent an abuse of discretion. See *Clay v. State*, 290 Ga. 822, 835 (3) (B) (725 SE2d 260) (2012). In *Clay*, our Supreme Court acknowledged that there had been "little guidance to the trial courts regarding

---

[6] Impeachment by prior convictions under the new Evidence Code is governed by OCGA § 24-6-609.

what constitutes an abuse of discretion in admitting such convictions under OCGA § 24-9-84.1." Id. Thus, it established five factors that trial courts should consider when conducting the balancing analysis:

> (1) the nature, i.e., impeachment value of the crime; (2) the time of the conviction and the defendant's subsequent history; (3) the similarity between the past crime and the charged crime, so that admitting the prior conviction does not create an unacceptable risk that the jury will consider it as evidence that the defendant committed the crime for which he is on trial; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue.

Id.

Here, the State timely filed a notice of its intention to impeach Frazier's credibility, should he testify at trial, with a 1973 conviction for voluntary manslaughter, a 1979 conviction for rape, two drug charge convictions in 1992 and 2000, and a 2009 conviction for aggravated assault.[7] Before Frazier took the stand, the trial court determined that the State would be permitted to use each of the prior convictions except for the 1973 manslaughter conviction, finding the convictions relevant and probative and permissible for the limited purpose of impeachment. On

---

[7] Frazier only objected to the introduction of the 1979 rape conviction.

7

direct examination, Frazier testified that he had picked up unknown women many times before because he was addicted to crack cocaine, did not like to smoke it alone, and wanted the company of women. During cross-examination, the State elicited testimony from Frazier that he became addicted to cocaine in the 1980s and did not suffer from an addiction problem in the 1970s. Frazier further testified that when he would pick up women, it was generally in areas where prostitutes would be and the encounters were always consensual. The State asked whether he had ever forced anyone to have sex with him, and Frazier replied, "No, ma'am." The State then impeached him with the 1979 conviction for rape.

After closing arguments, the trial court, realizing it had not made specific findings on the record with respect to its ruling permitting the introduction of prior convictions more than ten years old, proceeded to supplement the record with findings as to each of the *Clay* factors for the 1979 rape conviction and 1992 and 2000 drug convictions. The trial court then concluded that based on all of the particular facts and circumstances that it had enunciated, "the probative value of admitting [the] three prior convictions substantially outweighs the prejudicial impact that admission of those prior convictions would have on the defendant."

Although Frazier's trial counsel initially objected to the introduction of the 1979 rape conviction at the time the trial court ruled, just prior to Frazier's testimony, that the conviction could be used for impeachment on the grounds that it was "out of time," he offered no objection to the trial court's specific findings on the *Clay* factors after the trial court put those findings on the record. Thus, Frazier waived this enumeration of error on appeal by failing to object to what he now claims were inadequate findings. "[I]n order to raise on appeal an impropriety regarding the admissibility of evidence, the specific ground of objection must be made at the time the evidence is offered, and the failure to do so amounts to a waiver of that specific ground." (Citation omitted.) *Hites*, 296 Ga. at 530, n.4 (rejecting defendant's argument that the trial court did not perform or articulate the required balancing test pursuant to OCGA § 24-9-84.1 where that specific objection was not made at trial).

Moreover, even if Frazier had not waived this enumeration, the record clearly establishes that the trial court was aware of the specific factors required by *Clay* and carefully considered them before permitting the introduction of the 1979 rape case for impeachment purposes. Based on the circumstances of this case, we find no abuse of discretion in the trial court's admission of the evidence. See *Johnson v. State*, 328 Ga. App. 702, 709 (3) (b) (760 SE2d 682) (2014) (no abuse of discretion where trial court

9

considered the five factors set forth in *Clay* and concluded that given the nature of the charges in the case and the fact that the credibility of the victim and defendant were central to the issues, the probative value of the conviction was substantially outweighed by any prejudicial effect). Accordingly, this enumeration of error fails.

2. Frazier also asserts that he received ineffective assistance of counsel when his trial counsel failed to object to the State's impeachment of Frazier with an accusation of rape on which he was not convicted. To succeed on this claim, Frazier must show both that his counsel's performance was professionally deficient and that the deficient performance was prejudicial to his defense. See *Strickland v. Washington*, 446 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). "This burden, although not impossible to carry, is a heavy one." (Citation and punctuation omitted.) *McDuffie v. State*, 298 Ga. 112, 115 (2) (779 SE2d 620) (2015). To establish deficient performance, an appellant must overcome the strong presumption that his counsel's conduct fell within the broad range of reasonable professional conduct and "show that his counsel performed in an objectively unreasonable way, considering all circumstances and in the light of prevailing professional norms." *Prince v. State*, 295 Ga. 788, 791 (2) (764 SE2d 362) (2014). In order to establish prejudice, there must be a reasonable probability that, but for counsel's deficient performance, the outcome

10

of the trial would have been different. See *Pruitt v. State*, 282 Ga. 30, 34 (4) (644 SE2d 837) (2007). Failure to satisfy either prong of the *Strickland* test is sufficient to defeat a claim of ineffective assistance, and the reviewing court need not examine the other prong. See *Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012).

Here, prior to trial, the State filed a notice of intent to introduce evidence of similar transactions, including a 1999 allegation of rape, aggravated sodomy, kidnapping, and false imprisonment; the 2007 allegation of rape made by J. H.;[8] and a 2008 allegation of rape and aggravated assault.[9] Following a hearing, the trial court ruled that the State would only be allowed to introduce evidence of the 2007 and 2008 allegations of rape. The State ultimately only introduced evidence of the 2007 allegation made by J. H. as similar transaction evidence.

On direct examination, Frazier admitted that his cocaine addiction had caused him to go to jail for drug charges, violation of probation, and aggravated assault. During its cross-examination of Frazier, the State asked the trial court for a ruling outside the presence of the jury regarding whether it could impeach Frazier with

[8] J. H. eventually declined to prosecute as she did not want to "relive the same thing that [had happened to her] that night."

[9] In 2009, as part of a plea deal, Frazier entered a guilty plea only as to the aggravated assault charge.

11

additional allegations of rape. The trial court denied the State's request to introduce any further evidence of such allegations, but explained that the State would be permitted to question Frazier regarding the 2008 rape allegation that the trial court had previously determined was admissible as similar transaction evidence. The State then proceeded, without objection, to cross-examine Frazier:

> Q: Isn't it also true that in 2009 there was an allegation that you raped [S. W.]?
>
> A: Yes; that was overturned by the DA's office.
>
> Q: But you did, in fact, plead guilty to aggravated assault with a knife in that case; is that correct?
>
> A: Yes; the DA's office recommended that.[10]

At the motion for new trial hearing, Frazier's trial counsel testified that he did not object to this line of questioning because he believed "they were trying to use that for a different purpose. I forgot – I think it was – they were trying to use it to show pattern. I think the facts in that case may have been similar to what he was accused

---

[10] Frazier then explained that his semen had not been found in S. W. and that the aggravated assault plea was not for using a knife but for slapping S. W. to get his wallet back.

of." Pretermitting whether counsel's failure to object constituted deficient performance, we find that Frazier has failed to demonstrate prejudice. The evidence, including M. O.'s immediate outcry; the scratches on her neck, shoulders, and leg; Dr. Ware's testimony regarding internal trauma; the DNA evidence; the corroborating testimony of M. O.'s cousin and boyfriend; and the similar transaction evidence presented by J. H., constituted overwhelming evidence of guilt. Thus, Frazier cannot show that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. See *Johnson*, 328 Ga. App. at 712 (5) (b). Accordingly, the trial court did not err in denying Frazier's motion for new trial on this ground.

*Judgment affirmed. Ray and Peterson, JJ., concur fully in Division 2 and concur in judgment only as to Division 1.*