### S16A1116. WILLIAMS v. THE STATE.
(792 SE2d 336)

BENHAM, Justice.

Appellant Erik Albert Williams, Jr., appeals his convictions for the murder of Deangelo Hudgins, aggravated assault of Albert Gilbert, and other related offenses.[1] For the reasons set forth below, we reverse.

---

[1] The crimes occurred on July 18, 2010. On October 5, 2010, a Richmond County grand jury returned an indictment against Williams and co-indictee Edwin Cruz, charging Williams with malice murder, felony murder (aggravated assault), two counts of possession of a firearm during the commission of a crime, aggravated assault of victim Gilbert, and possession of a firearm by a convicted felon. Appellant was tried March 19-21, 2012, and the jury returned a verdict of guilty on all counts except the possession of a firearm by a convicted felon count, which was nol prossed. The felony murder verdict was vacated as a matter of law. Appellant was sentenced to life in prison without parole for the malice murder guilty verdict; five years for each of the two guilty verdicts on the possession of a firearm counts, to run consecutively with each other and

We view the evidence in the light most favorable to the verdict. On the night in question, victim Hudgins engaged in a physical altercation with a young woman in a car in which they and other friends were passengers returning home after a night of drinking and partying. When the driver pulled over and ordered the feuding passengers out of the vehicle, the altercation continued. In an apparent attempt to keep the young woman, Sade Davis, from hitting him, Hudgins grabbed her, and they ended up on the ground. Sade's brother, Tony Davis, was called to the scene, and Tony and Hudgins began shoving each other, but Tony eventually drove away. Hudgins also left the scene. The Davis siblings and others in the group ended up at an apartment. From there, Tony called his friend, appellant Williams, to tell him that Hudgins had choked his sister and to ask Williams to come over to the apartment. Williams then enlisted co-defendant Edwin Cruz to drive him to the apartment where Tony was located. Hudgins also enlisted a friend, Albert Gilbert, to pick him up from the place to which he fled after the roadside altercations and transport him to the apartment where he believed Tony had gone.

While Williams and Cruz were looking for the apartment, Cruz pulled over, retrieved a gun from under the seat, and placed it on the floor of the car. When Hudgins and Gilbert arrived, they commenced knocking loudly on the apartment door and demanded to speak with Tony, but those inside would not let them in. By that time, Williams and Cruz arrived, and Cruz positioned his car in such a way as to block Hudgins's and Gilbert's car. Hudgins and Gilbert approached Cruz's car and Gilbert leaned on the roof of the car on the passenger side and addressed the occupants. Williams, who was sitting in the front passenger's seat, picked up the pistol from the floor of the car and fired two shots, striking each of the victims, neither of whom was armed. Then Cruz and Williams fled in Cruz's car.

Hudgins died of his injuries. The medical examiner testified at trial that the cause of Hudgins's death was a gunshot wound to the abdomen. Gilbert was also shot and sustained a fractured hip. After the shooting, Williams sold a handgun, and police recovered the gun from the purchaser during a traffic stop. An expert witness testified that a projectile recovered from Hudgins's body during the autopsy

with the life sentence; and twenty years imprisonment on the aggravated assault guilty verdict to run consecutively with the life sentence and the sentences on the two guilty verdicts for possession of a firearm during the commission of a crime. Appellant filed a timely motion for new trial which was later amended. After a hearing, the trial court denied the amended motion for new trial by order filed May 19, 2015. Appellant filed a timely notice of appeal, and the case was docketed to the April 2016 term of court, and orally argued on June 12, 2016.

had been shot by the gun appellant sold after the shooting. A few weeks later, Williams, who knew he was wanted by the authorities, made contact with his parole officer and surrendered to police. He gave a statement to police which was recorded and played to the jury at trial. In the statement, he initially denied being involved in the shooting, but ultimately told police he received a call from Tony on the night of the shooting and went with Cruz to help Tony out; that he was scared when two unknown individuals approached Cruz's car, but did not mention seeing either individual draw a weapon; and he admitted firing two shots and leaving the scene. Williams testified at trial that he enlisted Cruz to take him to the apartment complex where the shooting occurred in response to Tony's call in which Tony explained what had transpired between Hudgins and Tony's sister, Sade. Williams claimed that two individuals he did not know started yelling at him and approached Cruz's car in an aggressive manner, and that he saw one of the individuals reach behind him and pull what appeared to be a black object from his back. Williams claimed he felt nervous and scared because Hudgins and Gilbert were significantly larger than he, and were behaving aggressively and making hostile statements. He claimed he reached for the gun that was on the floor of the car and fired two shots in an effort to defend himself. He also claimed he did not realize at the time that anyone had been struck.

1. Even though Williams does not challenge the sufficiency of the evidence to sustain his convictions, it is this Court's practice in murder cases to conduct an examination of the record to determine the legal sufficiency of the evidence. Having done so, we conclude the evidence adduced at trial, and summarized above, was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Williams was guilty of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. After the State rested its case and Williams announced his intent to testify, the State sought a preliminary ruling permitting it to introduce evidence of Williams's prior felony convictions, basing its request upon former OCGA § 24-9-84.1, which addresses impeachment of credibility by prior convictions.[2] Williams's counsel responded

---

[2] Since this case was tried prior to the effective date of the new Evidence Code, the former Evidence Code applied to the evidentiary issues of the trial. Impeachment by prior convictions under the new Evidence Code is governed by OCGA § 24-6-609. Former OCGA § 24-9-84.1 (a) (2) provided that the credibility of a defendant who testifies could be attacked as follows:

> Evidence that the defendant has been convicted of a crime shall be admitted if the crime was punishable by death or imprisonment of one year or more under the law under which the defendant was convicted if the court determines that the probative

that evidence of his prior convictions could be presented for impeach-
ment only if Williams placed his character in issue.[3] The State,
however, asserted that the probative value of evidence relating to
Williams's 2007 conviction for the offense of terroristic threats was
sufficient to satisfy the standard of former OCGA § 24-9-84.1 (a) (2)
in that it would rebut or negate any suggestion that Williams was
acting peaceably on the night in question, that such evidence was
relevant to Williams's affirmative defense of justification or self-
defense, and that this evidence was thus admissible whether or not
Williams placed his character in issue.[4] The State also argued that
evidence of his 2009 theft by taking conviction was admissible for the
same reason. Addressing the State's theory of admissibility, the trial
court ruled it would disallow the prior convictions evidence at that
time but indicated it would reconsider the issue if, after hearing
Williams's testimony, it determined the evidence was appropriate.

Williams then testified, and he mentioned in his direct testimony
that he surrendered to the authorities after visiting his parole officer.
The State renewed its request for leave to present evidence of
Williams's prior felony convictions, arguing this time that Williams's
direct testimony had opened the door for the State to present evidence
that Williams was on parole for the theft by taking conviction as well
as evidence of his conviction for terroristic threats. In response,
Williams's counsel made an objection as to admissibility, arguing that
his testimony did not place his character in issue and that if it did it
did not constitute evidence of his good character but actually reflected
badly on his character. Further, counsel made an objection as to scope,
arguing that Williams's testimony related only to the theft by taking

---

value of admitting the evidence substantially outweighs its prejudicial effect to the
defendant[.]
We note that the balancing test set forth in new OCGA § 24-6-609 no longer requires a finding
that probative value of the evidence "substantially" outweighs its prejudice if the witness is the
accused.

[3] This is incorrect. "[I]f a criminal defendant testifies, the State may introduce evidence he
has been convicted of a felony even if the defendant does not place his character in issue so long
as the trial court determines that the probative value of admitting the evidence substantially
outweighs its prejudicial effect." (Punctuation omitted.) *Brooks v. State*, 285 Ga. 246, 250 (4) (d)
(674 SE2d 871) (2009).

[4] We note that the argument initially made by the State is also faulty, because it is not
dispositive of the issue of whether evidence of Williams's prior conviction is admissible
pursuant to the standard set forth in former OCGA § 24-9-84.1 (a) (2) — that "the probative
value of admitting the evidence substantially outweighs its prejudicial effect to the defen-
dant[.]" In essence, the State initially argued at trial that evidence of Williams's prior conviction
for terroristic threats made it more likely that he committed the crimes with which he was
charged in this case. That is not the purpose for admitting such evidence under this statute. The
statute sets forth the standard for determining whether evidence of a previous crime is
probative of the issue of the defendant's credibility, not the issue of his guilt as charged.

charge, which was the conviction for which he was on parole. The trial court ruled that because "the door [had] been opened" on direct examination with respect to "the parole issue," it would permit the State the opportunity to conduct a thorough and sifting cross-examination and further ruled it would not restrict the State's cross-examination to the theft offense for which he was on parole. The trial court noted that Williams had the right to raise any objection during the cross-examination, and Williams's counsel responded that he wished to enter a continuing objection, which was granted. The only objections that had been raised at that time, however, were the objection that the State should not be permitted to place the defendant's character in evidence in its cross-examination when the defendant had not placed his character at issue in his direct testimony and the objection that any testimony should be limited to the theft by taking conviction.

The State then cross-examined Williams on both previous convictions and also introduced certified copies of the convictions into evidence. At the conclusion of the cross-examination, Williams's counsel restated his objection that the testimony and documents were not admissible because Williams did not bring his character into evidence in his testimony, and the State again asserted that both the testimony and the documentary evidence were admissible because the defendant did introduce his character into evidence.[5] At this time, the State did not seek admission of this evidence to impeach credibility, pursuant to former OCGA § 24-9-84.1 (a) (2). The trial court overruled the objection to the cross-examination and admitted the documentary evidence of both convictions. In its order denying the motion for new trial, the trial court denied Williams's assertion that the evidence of prior convictions was erroneously admitted, but not on the ground that it was admissible to rebut character evidence; instead the trial court found that impeachment of Williams's credibility by evidence of his prior felony convictions was proper pursuant to former OCGA § 24-9-84.1. Still, the trial court made no determination on the record that the probative value of the evidence substantially outweighed its prejudicial effect. Williams asserts evidence of his prior convictions was admitted erroneously. As to the evidence relating to the terroristic threats conviction, we agree. Therefore, Williams is entitled to a new trial.

---

[5] Although the State did not expressly refer to this Code section, at the time this case was tried, pursuant to former OCGA § 24-9-84 (3) the character for untruthfulness of a criminal defendant could be introduced only if the defendant testified and gave evidence of his or her truthful character.

In *Morgan v. State*,[6] this Court ruled that a defendant's reference to his parole status made in his direct testimony does not place defendant's character at issue, but does raise an issue that can be fully explored on cross-examination with respect to the conviction for which he was on parole. See also *Jones v. State*, 257 Ga. 753, 759 (1) (b) (363 SE2d 529) (1988). This is because a party has a right to a thorough and sifting cross-examination of an adverse witness with respect to matters raised in the witness' testimony. See former OCGA § 24-9-64.[7] The record reflects Williams was on parole for the theft by taking offense, and thus no error is shown by the State's cross-examination of Williams with respect to his conviction for this crime. Accordingly, the trial court properly denied the motion for new trial with respect to this evidence.

The State initially based its request for permission to introduce evidence of both prior convictions for the purpose of impeachment of credibility by felony conviction, pursuant to former OCGA § 24-9-84.1 (a) (2). At that time, the State argued that the probative value of the evidence relating to the terroristic threats conviction satisfied the balancing test of the statute, but the trial court ruled against the State, presumably concluding the balancing test was not met. In fact, as noted in footnote 4, supra, the State's argument did not support admission for the purpose of attacking credibility since the State essentially argued that the evidence relating to the terroristic threats conviction made it more likely that he committed the charged crimes, which is not the purpose of admission pursuant to former OCGA § 24-9-84.1 (a) (2), and, indeed, this argument suggests the prejudicial impact of the evidence. After Williams testified and the State again sought permission to present evidence of his prior convictions, the State no longer offered the evidence for the purpose of impeaching Williams's credibility pursuant to this statute. Instead, in response to objections both before and after cross-examination, the State asserted Williams had introduced his character into evidence thereby opening the door to cross-examination relating to character.

For evidence of Williams's conviction for terroristic threats to be admissible pursuant to former OCGA § 24-9-84.1 (a) (2), as the State now urges, the trial court was required to make an on-the-record finding that the probative value of admitting that conviction substantially outweighed the prejudicial effect of its admission. See *Clay*

---

[6] 275 Ga. 222, 223 (3) (564 SE2d 192) (2002).

[7] Now codified at OCGA § 24-6-611 (b).

*v. State*, 290 Ga. 822, 835-838 (3) (B) (725 SE2d 260) (2012).[8] The trial transcript shows the court did not make that required finding. Even though this Court has held that a trial court has no duty to conduct the balancing test of former OCGA § 24-9-84.1 absent an objection,[9] the State in this case did not seek at trial to admit the challenged evidence for the purpose of impeaching Williams's credibility, and it is clear that this is not the ground on which it was admitted at trial. Therefore we cannot say that Williams waived his right to have the required statutory determination made before the trial court ruled the evidence was properly admitted since it was neither offered nor admitted for this purpose at trial.

Instead, we find the evidence relating to the terroristic threats conviction was improperly admitted. Because Williams presented a credible defense, we cannot say the admission was harmless error because of overwhelming evidence of guilt. Accordingly, Williams is entitled to a new trial. Because the remaining alleged errors involve issues that are not likely to recur at retrial, we need not address them.[10]

*Judgment reversed. All the Justices concur.*

DECIDED OCTOBER 17, 2016.

*John M. Kraft, Thomas E. McCants*, for appellant.

*Ashley Wright, District Attorney, Joshua B. Smith, Assistant District Attorney; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Aimee F. Sobhani, Assistant Attorney General*, for appellee.

---

[8] Although the *Clay* opinion was issued during the time this case was being tried, the only new rule announced in that opinion with respect to findings about the probative value of prior conviction evidence admitted pursuant to OCGA § 24-9-84.1 (a) (2) was to eliminate the requirement that the trial court give specific reasons for its on-the-record finding regarding the probative value of the evidence. The statutory requirement that a trial court make a determination regarding the probative value of such prior conviction evidence in order for it to be admissible already existed, as did the binding authority requiring the trial court to make an express finding regarding the probity of the evidence compared to its prejudicial effect. See *Quiroz v. State*, 291 Ga. App. 423, 428 (4) (662 SE2d 235) (2008).

[9] See *Collier v. State*, 288 Ga. 756, 758 (3) (707 SE2d 102) (2011).

[10] The remaining enumerations of error relate to jury selection, a comment by the prosecutor during closing argument, and alleged ineffective assistance of trial counsel.