309 Ga. 755
FINAL COPY

S20A0870.  BUTLER v. THE STATE.

BOGGS, Justice.

Appellant Patrick Dela Butler challenges his 2011 convictions for malice murder and two firearms offenses in connection with the shooting death of Darryl Walden. Appellant argues that the evidence presented at trial was legally insufficient to support his convictions, that the trial court made several evidentiary errors, and that he was denied the effective assistance of counsel. As explained below, the evidence presented at trial was legally sufficient to support his convictions. However, the trial court applied the wrong standard in admitting evidence of Appellant's 2005 felony conviction for obstructing a law enforcement officer during the first stage of the bifurcated trial, and we cannot say that the admission of the evidence was harmless. Accordingly, we vacate Appellant's convictions, and we remand the case to the trial court to apply the correct standard and determine whether the prior felony conviction

should have been admitted. We need not address Appellant's other enumerations of error at this time.[1]

1. The record of the trial shows the following. It was undisputed that on the evening of August 17, 2009, Appellant pulled out a gun, fired a single fatal shot at Walden, fled from the scene, disposed of the gun, and then denied his involvement to a friend in the days after the shooting. What was disputed was whether that shot was

---

[1] Walden was killed on August 17, 2009. On October 27, 2009, a Richmond County grand jury indicted Appellant for malice murder, felony murder predicated on aggravated assault, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. The trial court decided to bifurcate the trial of the felon-in-possession charge from the other charges, which were to be tried first. At the bifurcated trial from July 18 to 21, 2011, the jury found Appellant guilty on all counts. The trial court sentenced Appellant to serve life in prison without the possibility of parole for malice murder, five years consecutive for possession of a firearm during the commission of a felony, and five years consecutive for the felon-in-possession conviction. The court purported to merge the felony murder count into the malice murder conviction, but the felony murder count was actually vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 373 (434 SE2d 479) (1993). On July 22, 2011, Appellant filed a motion for new trial, which he amended with new counsel on October 8, 2013. After an evidentiary hearing, on February 3, 2014, the trial court denied the motion. Appellant filed a timely notice of appeal. After a five-year delay, on March 28, 2019, the trial court held an additional hearing on the new trial motion to reconstruct the testimony of trial counsel from the original motion for new trial hearing that was missing from the transcript. The case was docketed in this Court to the April 2020 term and submitted for a decision on the briefs.

fired in self-defense.

Two eyewitnesses testified, as did Appellant, that prior to the shooting, Walden was sitting in front of an apartment at the Salem Arms apartment complex in Augusta when Appellant approached him and, after a brief exchange between Appellant and Walden, Walden's facial expression suddenly changed. It was at this point that the testimony of the two eyewitnesses and Appellant began to diverge.

According to Jennifer Smith, an eyewitness and Walden's girlfriend, Walden walked to Smith's SUV, which she had just parked, and Appellant followed close behind Walden and, standing mere inches away, spoke aggressively into Walden's ear. Walden then pushed Appellant away, and the two began "tussling" for a few minutes in front of Smith's vehicle; punches were thrown but neither man landed any significant blows. Walden grabbed Appellant and slung him to the ground, pulling Appellant's shirt off. At this point, Appellant rose to his feet about five feet away from Walden and drew a small black handgun from his waistband. Walden threw his hands

up, and Appellant fired once at Walden, striking him in the chest, before fleeing the scene. Smith admitted that she had never seen Appellant before, that Walden had enemies, that it looked like Appellant and Walden were having a misunderstanding before the fight began, that she could not hear what Appellant and Walden were saying, and that she did not see what occurred behind her SUV before the fight began or when Appellant and Walden were on the ground. During a police interview, Smith also stated that before the fight began, Walden had pushed Appellant away "forcefully" and Appellant had put his hands up in a confused manner.

The other eyewitness, Ronald Weaver, who was sitting across the parking lot, gave a somewhat different account of events. Weaver testified that he saw Appellant start the fight by grabbing Walden, that the fight lasted about three or four minutes, and that he thought Appellant and Walden were playing around until he saw Appellant throw Walden to the ground, pull out a gun, and shoot Walden as Walden stood up. Like Smith, Weaver testified that Appellant then ran away. Weaver testified that the "aggressor" was

the person who knocked the other man to the ground, that there was no fighting or wrestling going on when Appellant shot Walden, that he never saw Walden on top of Appellant, and that he never saw Appellant try to disengage from the fight.

Appellant testified in his own defense. The defense theory was that Walden mistook Appellant for Ryan Davis, who testified that he and Walden were enemies, that he was incarcerated at the time of the shooting, and that Walden would act tough and cause trouble when around friends. According to Appellant, he was visiting his sister and her children at her apartment at Salem Arms when he decided to take a walk to ease the pain in his ankle from a childhood sports injury. Having babysat for his sister's children before and not wanting to leave his gun in the apartment with the children, he took it with him on the walk. While out walking, Walden called Appellant over, asking him for a light for his cigarette, and Appellant agreed, but when Appellant approached, Walden's demeanor suddenly changed, becoming hostile. Walden demanded to know why Appellant was there, cursed at him profusely, called him "Ryan,"

and said that he had no business being there. Appellant testified that when he tried to back away, Walden cut him off and continued to call him "Ryan" and curse him, causing Appellant to throw his hands up in confusion. Walden continued to berate Appellant and punched him in the face. The two then fought, and Walden grabbed the back of Appellant's oversized shirt and pulled it over Appellant's head so he could not see. Appellant's shirt came off as he fell to the ground and Walden got on top of him. Now shirtless, Appellant worried that Walden could see Appellant's gun and that Walden was going to kill him with it. Appellant also felt Walden's knee pressing the gun into Appellant's side. Terrified that Walden would grab the gun and shoot him, Appellant mustered the strength to push Walden off and get up, at which point Walden lunged toward him. Appellant testified that he believed that Walden was going for his gun, and in response, he pulled out his gun, fired one shot at Walden, and ran away scared for his life. Appellant acknowledged that he denied his involvement in the shooting to his friend Hope Hunter out of fear that she would tell someone, which he worried could endanger his

friends or family.

The other witness testimony at the trial did not strongly favor one story over another. The medical examiner explained that the lack of stippling or soot on Walden's skin meant the gun was fired from at least 18 inches away, but he admitted that Walden's shirt could have prevented soot and stippling from appearing on the body, that he never received the shirt for testing, and that he thus could not determine how far away Walden was when Appellant pulled the trigger. Hunter testified that in the days following the shooting, Appellant told her he did not shoot Walden. However, she acknowledged that she received a $1,000 reward for assisting police in setting Appellant up to be arrested. Walden's mother, Dorothy Dunbar, testified that Walden was "God-fearing" and a hard worker but also that he had some trouble with some others from the neighborhood and had pled guilty to aggravated assault for shooting at an occupied vehicle. The State also presented evidence that in 2005, Appellant pled guilty to obstruction of a law enforcement officer, a felony.

Appellant argues that the State failed to present sufficient evidence to disprove his claim of self-defense beyond a reasonable doubt. However, the evidence presented at trial and summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Appellant did not act in self-defense and instead was guilty of malice murder. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also *Shaw v. State*, 292 Ga. 871, 872 (742 SE2d 707) (2013) ("[I]ssues of witness credibility and justification are for the jury to decide, and the jury is free to reject a defendant's claim that he acted in self-defense." (citation and punctuation omitted)). And even though Appellant does not challenge the sufficiency of the evidence with respect to his other convictions, we have — consistent with our current practice in murder cases — reviewed the evidence presented at trial and conclude that it was sufficient to enable a rational jury to conclude beyond a reasonable doubt that Appellant was also guilty of the

other crimes for which he was convicted.[2]

2. Appellant argues that the trial court erred in admitting evidence of his 2005 felony conviction for obstructing a law enforcement officer during the first phase of the bifurcated trial. He contends — and the State concedes — that the trial court erred by applying the wrong legal standard in deciding whether to admit the evidence. We agree.

(a) The indictment charged Appellant with possession of a firearm by a convicted felon based on evidence of Appellant's 2005 felony conviction for obstructing a law enforcement officer. The trial court bifurcated the trial so that the jury would not learn about the felon-in-possession charge and Appellant's prior felony conviction until after deciding the other charges. During the first phase of the bifurcated trial, after the State rested and before the defense presented its case, the State sought a ruling that should Appellant

---

[2] We remind litigants that the Court will end its practice of considering sufficiency sua sponte in non-death penalty cases with cases docketed to the term of court that begins in December 2020. See *Davenport v. State*, 309 Ga. 385, 399 (4) (846 SE2d 83) (2020). The Court began assigning cases to the December term on August 3, 2020.

testify, the State would be allowed to impeach him with evidence of the 2005 felony obstruction conviction, arguing it was probative because it was "proof positive that [Appellant] was not acting in self-defense on the day in question." Appellant objected that doing so would impermissibly put his character at issue. The trial court reserved ruling to see how the defense presentation played out and whether the "door [was] open[ed]" to admit evidence of the prior conviction for its bearing on Appellant's "credibility, his conduct, [or] character."

Appellant later testified, and in the middle of his direct examination, the State asked for a bench conference to argue for the admission of evidence of the 2005 felony obstruction conviction during cross-examination. Appellant again objected, arguing that the 2005 felony obstruction conviction had nothing to do with truthfulness and was not admissible as a similar transaction. The State responded that it was not offering the evidence as a similar transaction but instead that former OCGA § 24-9-84.1 controls, which the State asserted allows admission of a prior conviction if

"the probative value outweighed the prejudicial effect" of its admission. The State argued that the evidence was probative because it rebutted Appellant's self-defense theory that "he was acting peacefully that night." The trial court ruled:

> My concern is this now that I've heard the testimony, here you have a defendant who has testified that he was scared. Has testified that he was carrying a gun in his waistband. He says for the reason that he did not want to leave it at the apartment because his sister's children were there. And the same weapon is pulled and used in the death. I think it [evidence of the 2005 felony obstruction conviction] does have probative value at this point so I'm going to allow that. I find that it does — that the probative value will outweigh any prejudicial effect. I'll allow it.

Appellant moved for a mistrial, which was denied.

On cross-examination, the State asked Appellant about the prior conviction:

> STATE: Okay. Now this is not your first brush with the law, is it?
> APPELLANT: No, sir.
> STATE: In fact, in 2005 you were convicted of felony obstruction of a law enforcement officer were you not?
> APPELLANT: Yes, sir, I was.
> STATE: And that crime has to do with offering, threatening or doing violence against a law enforcement officer, does it not?

APPELLANT: Yes, sir, to a certain extent it does.

STATE: Okay. And you in fact pled guilty to that on 19 October 2005?

APPELLANT: Yes, sir.

STATE: To offering violence or doing violence to a law enforcement officer?

APPELLANT: Yes, sir.

STATE: In the lawful discharge of his duties?

APPELLANT: Yes, sir.

STATE: In other words a police officer out there doing his job?

APPELLANT: Yes, sir.

STATE: You were convicted of obstructing that?

APPELLANT: Yes, sir.

At the close of the first phase of the bifurcated trial, the State introduced into evidence certified copies of the 2005 indictment and plea, which indicated that the conviction was based on kicking an officer.

(b) The trial court failed to apply the proper standard for admitting a defendant's prior conviction to impeach him. The old Evidence Code applied to Appellant's 2011 trial. Former OCGA § 24-9-84.1 (a) (2) said:

> Evidence that the defendant has been convicted of a crime shall be admitted if the crime was punishable by death or imprisonment of one year or more under the law under which the defendant was convicted if the court

> determines that the probative value of admitting the evidence *substantially* outweighs its prejudicial effect to the defendant.

(2006) OCGA § 24-9-84.1 (a) (2) (emphasis supplied).[3] Under that statute, the trial court was required "to make an on-the-record finding that the probative value of admitting a prior conviction substantially outweigh[ed] its prejudicial effect" before admitting evidence of the prior conviction. *Clay v. State*, 290 Ga. 822, 836 (725 SE2d 260) (2012). See also *Williams v. State*, 299 Ga. 834, 839 n.2 (792 SE2d 336) (2016).

As noted above, the State concedes that the trial court erred by applying the wrong standard in determining whether evidence of Appellant's 2005 felony obstruction conviction was admissible. The trial court concluded that the probative value of that evidence merely *outweighed* — not that it *substantially outweighed* — its prejudicial effect to Appellant. See *Clay*, 290 Ga. at 836. The record

---

[3] Impeachment by prior conviction under the current Evidence Code is governed by OCGA § 24-6-609. We note that the balancing test set forth in OCGA § 24-6-609 (a) (1), where the witness is the accused, no longer requires a finding that the probative value of the evidence "substantially" outweighs its prejudicial effect to the accused.

supports the State's concession. The State specifically argued that the evidence was admissible because its probative value merely outweighed its prejudicial effect on Appellant, and in admitting the evidence, the trial court stated on the record that the probative value of the evidence merely outweighed its prejudicial effect.

Moreover, it appears that the trial court was confused as to the purpose for which the evidence was being admitted: as a similar transaction, as character evidence, or as impeachment. Despite the State's claim that it was offering the evidence for impeachment under former OCGA § 24-9-84.1, in admitting the evidence, the trial court's ruling focused on what Appellant said about his possession of the gun used in the fatal shooting (suggesting a similar transaction analysis) and his fear of Walden and care for the safety of his sister's children (suggesting that Appellant opened the door to character evidence) rather than how probative the conviction would be in impeaching Appellant's credibility. See *Williams*, 299 Ga. at 837 n.4 (explaining that former OCGA § 24-9-84.1 (a) (2) "sets forth the standard for determining whether evidence of a previous crime

is probative of the issue of the defendant's *credibility*, not the issue of his *guilt* as charged." (emphasis supplied)). Thus, we agree that the trial court applied the wrong legal standard in deciding whether to admit the evidence of Appellant's 2005 felony obstruction conviction under former OCGA § 24-9-84.1 (a) (2) during the first phase of the bifurcated trial.

(c) The State argues, however, that the evidence was nonetheless admissible under the correct legal standard. The State asserts that the trial court properly admitted the evidence because Appellant testified that he was scared during the encounter with Walden and his credibility was central to the case. Yet, it is not so clear that the trial court would have abused its discretion had it chosen to admit or exclude the evidence under the proper legal standard.

As to probative value, once Appellant testified, his credibility was certainly a key issue. See *Williams*, 299 Ga. at 837 n.4; *Clay*, 290 Ga. at 835 (noting that the "centrality of the credibility issue" is a factor in whether to admit the prior conviction). See also *Quiroz v.*

*State*, 291 Ga. App. 423, 428 (662 SE2d 235) (2008). Where the defendant's credibility is particularly important, the impeachment quality of a prior felony conviction is rightly given great weight. See *Peak v. State*, 337 Ga. App. 441, 443 (787 SE2d 792) (2016) (affirming the admission of the defendant's prior felony conviction under former OCGA § 24-9-84.1 (a) (2) where there were only two eyewitnesses, one being the defendant, in part because the defendant's credibility was "crucial"); *Johnson v. State*, 328 Ga. App. 702, 709 (760 SE2d 682) (2014) (giving the impeachment value of evidence of a prior felony conviction great weight when the defendant's credibility was a central issue in the case). Appellant's testimony contrasted with that of the two eyewitnesses regarding who was the aggressor in the fight, the eyewitnesses' stories conflicted on important details, and Appellant provided the only testimony that purported to explain why the fight began in the first place (i.e., mistaken identity). Appellant's self-defense claim rested heavily on his credibility. Yet, Appellant's prior conviction was not directly related to his credibility — that is, his truthfulness —

beyond generalized notions that felons, as a group, are less truthful than non-felons, as a group. See, e.g., *Douglas v. State*, 327 Ga. App. 792, 798 (761 SE2d 180) (2014) (admission of prior felony conviction is just a general attack on credibility).

As to prejudice, on the one hand, the prior conviction and the State's questioning — asking whether Appellant committed violence against a police officer just doing his job — raised the risk that the jury would make the highly prejudicial and forbidden inference that when Appellant shot the victim, he must have been acting in conformity with his violent character rather than in self-defense (i.e., propensity evidence). See *Old Chief v. United States*, 519 U. S. 172, 180-181 (117 SCt 644, 136 LE2d 574) (1997) ("'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one. Such improper grounds certainly include . . . generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged (or, worse, as calling for preventive conviction even if he should happen to be

innocent momentarily).” (citation and punctuation omitted)). On the other hand, neither Appellant's testimony that he obstructed an officer by offering or doing violence nor the indictment showing that he "kicked" the officer (a point never mentioned in testimony) is evidence of a crime similar to the crime for which Appellant was on trial; this evidence, without more, is not necessarily so prejudicial as to foreclose its admission. See *Robinson v. State*, 312 Ga. App. 110, 113 (717 SE2d 694) (2011) (noting that when conduct for which the defendant is tried is dissimilar to that involved in the prior convictions, the danger of prejudice is lessened). See also *Frazier v. State*, 336 Ga. App. 465, 469 (784 SE2d 827) (2016) (affirming admission of a prior rape conviction during a trial for rape with proper findings); *Johnson*, 328 Ga. App. at 709 (affirming admission of prior conviction for terroristic threats in rape trial with proper findings).

In short, it is not apparent that it would have been an abuse of discretion for the trial court to have either admitted or excluded the 2005 felony obstruction conviction under the proper standard.

(d) The State also argues that even if, under the correct legal standard, the trial court would have exercised its discretion to exclude evidence of the 2005 felony obstruction conviction during the first phrase of the bifurcated trial, we should still affirm Appellant's convictions because any error in admitting the evidence was harmless in light of the "overwhelming" evidence of Appellant's guilt. We disagree.

"The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict." *Kirby v. State*, 304 Ga. 472, 478 (819 SE2d 468) (2018) (citation and punctuation omitted). It is the State's burden to show harmlessness. *Bozzie v. State*, 302 Ga. 704, 708 (808 SE2d 671) (2017). In deciding whether the State has met its burden, "we weigh the evidence as we would expect reasonable jurors to have done so, as opposed to assuming that they took the most pro-guilt possible view of every bit of evidence in the case." *Boothe v. State*, 293 Ga. 285, 289 (745 SE2d 594) (2013) (citations omitted).

Even though the evidence of Appellant's guilt was sufficient to

support the jury's guilty verdicts under *Jackson v. Virginia*, supra, the evidence that Appellant was not acting in self-defense when he shot Walden was not particularly strong. There were only two eyewitnesses to the shooting other than Appellant. Smith was Walden's girlfriend, could not hear what Appellant and Walden were saying, and could not see parts of the fight, including how it began. Weaver's version differed from Smith's in critical respects, including who initiated physical aggression and who ended up on the ground and when. Much of the State's remaining evidence was circumstantial — testimony that after the shooting, Appellant fled the scene, lied to his friend about being involved in the shooting, and did not tell anyone prior to trial that he shot Walden in self-defense — and none of that testimony is compelling evidence of Appellant's guilt.

Given the relative weakness of the State's evidence of Appellant's guilt, we cannot conclude that it is highly probable that any error in the admission of evidence of Appellant's 2005 felony conviction for obstructing a law enforcement officer during the first

phase of the bifurcated trial did not contribute to the guilty verdicts and was therefore harmless. Accordingly, we vacate Appellant's convictions, and we remand this case to the trial court with direction to exercise its discretion to determine under the correct former OCGA § 24-9-84.1 (a) (2) standard if the prior felony conviction was properly admitted. If the trial court decides under the correct standard that the prior felony conviction was properly admitted, then the court should re-enter the judgments of conviction and sentence against Appellant, and Appellant could then take another appeal challenging that ruling. If, on the other hand, the court decides that the prior felony conviction evidence should have been excluded, then a new trial will be necessary.[4] See *Rouzan v. State*, 308 Ga. 894, 901 (843 SE2d 814) (2020).

3. The remaining enumerations of error — two other allegedly erroneous evidentiary rulings and Appellant's claim of ineffective assistance of trial counsel — are unlikely to recur in the event of a

---

[4] Given the age of this case, it is imperative that the trial court move promptly in determining this issue on remand.

retrial, so we do not address them now. Appellant may raise these issues again in a renewed appeal if the trial court does not grant him a new trial and re-enters the judgments of conviction and sentence. See *Rouzan*, 308 Ga. at 901.

*Judgment vacated and case remanded with direction. All the Justices concur.*

Decided September 8, 2020.

Murder. Richmond Superior Court. Before Judge Brown.
*Lucy D. Roth*, for appellant.
*Natalie S. Paine, District Attorney, Joshua B. Smith, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Alex M. Bernick, Assistant Attorney General*, for appellee.